UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THOMAS CLYDE WHITE,

                    Plaintiff,

-vs-                                        Case No.  6:09-cv-1208-Orl-28GJK

COMMISSIONER OF SOCIAL
SECURITY,

                    Defendant.
_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

      Thomas Clyde White (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for benefits.  Doc. No. 1.  Claimant argues that the final decision of the Commissioner should be reversed because: 1) the ALJ's findings regarding the Claimant's substance abuse are not supported by substantial evidence and the ALJ applied an incorrect legal standard as to that issue; 2) the Administrative Law Judge (the "ALJ") and the Commissioner failed to apply the correct legal standards regarding the effectiveness and side-effects of the Claimant's medications; and 3) the ALJ's finding that the Claimant can perform his past relevant work are not supported by substantial evidence. The undersigned recommends that the Commissioner's decision be **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) because the final decision of the Commissioner is not supported by substantial evidence.**

I.    **BACKGROUND.**

Claimant was born on June 11, 1969, and he a general education diploma ("GED").  R. 110, 112, 594.[1]  Claimant's past employment experience includes working as an automobile mechanic, painter, general day laborer, cleaner and building maintenance repairer.  R. 102, 597-600, 624-25. Claimant has not engaged in substantial gainful activity since January 31, 2003.  R. 23.  Although no application for benefits is included in the record, the parties agree that on October 3, 2005, Claimant filed an application for benefits alleging an onset of disability as of January 31, 2003.  *See* Doc. Nos. 15 at 2, 16 at 1.   Claimant alleges disability due to bipolar disorder, kidney and intestinal problems as well as tendinitis of the hands.  R. 81.

Claimant's medical history reveals a long history of mental health problems, including numerous suicide attempts, and substance abuse.  *See generally* R. 224.  Claimant's psychiatric history dates back to the third grade and includes over twenty inpatient hospitalizations.  R. 146. Prior to March 18, 2000, Claimant attempted suicide at least six times.  R. 325.  On March 18, 2000, Claimant was admitted to Wellstar Cobb Hospital with suicidal ideation.  R. 325.  The history of Claimant's mental illness as set forth in Wellstar Cobb Hospital's March 20, 2000 discharge summary is in large part representative of the entire medical record:

> He is manic depressive, which has been ongoing with both depressive and hypomanic episodes since age 14.  When he is hyperactive and hypomanic, he talks and moves fast, spends money excessively . . . and his judgment is impaired. . . .  When depressed, he has low energy, sleep difficulty, feels hopeless, and is suicidal.  In addition, over the past six months, he has developed intense anxiety periods lasting several days with chest pains, hands shaking, rapid heart rate, needing to take deep breaths and feeling that the room is closing in.  These are largely hyperventilation physiologic sequelae.  Depressed episodes last four to seven days. The patient also has episodic problems with abuse of alcohol,

---

[1] Claimant was thirty-eight (38) years old at the time of the hearing before the ALJ in this case.  R. 593.

> marijuana and occasionally cocaine and speed. . . . On admission,
> diagnostic impression was bipolar disorder, depressed, rapid
> cycling, nonpsychotic generalized anxiety disorder, severe, with
> hyperventilation syndrome.  Polysubstance abuse was also noted. .
> . . GAF was 35 on admission, highest for year is 60.

R. 325.  Claimant was diagnosed with major affective disorder, bipolar depressed, and rapid

cycling.  R. 326.  He was treated on an involuntary inpatient basis for three days and then

released.  R. 325-27.

On July 28, 2000, Claimant was admitted for one month at Peachford Behavioral Health

System of Atlanta with bipolar disorder with psychotic features.  R. 224-28.  Claimant presented

with suicidal ideation with specific plans, auditory and visual hallucinations.  R. 224.  Upon

admission, Claimant was positive for marijuana.  R. 225.  At discharge, Claimant was diagnosed

with bipolar disorder, mixed, with psychotic features, alcohol abuse, and Claimant was assigned

a GAF score of 55. R. 226.  Claimant was prescribed numerous medications, including Lithium

and Depakote.  R. 227.

On July 26, 2003 through August 25, 2003, Claimant was admitted to Wellstar

Kennestone Hospital after attempting suicide by drinking a large amount of ethylene glycol - -

antifreeze.  R. 150-74.  Claimant reported a history of alcohol abuse, including five prior driving

under the influence arrests.  R. 161.  Claimant was diagnosed with major depression with a

history of alcohol abuse and assigned a GAF score of 20.  R. 162.  After making a physical

recovery, Claimant was transferred to a Wellstar Cobb Hospital facility because "he is severely

depressed."  R. 151, 162.  Claimant received inpatient psychiatric care at Wellstar Cobb Hospital

from August 25, 2003 through September 3, 2003.  R. 317-24.  Claimant's discharge diagnosis

was bipolar disorder – depressed and alcohol dependence. R. 317. Claimant was assigned a GAF

score of 60.  R. 317.  The medical record shows that Claimant stopped taking his medication and increased his alcohol intake three months prior to the suicide attempt.  R. 317.

On November 9, 2004 through November 11, 2004, Claimant was admitted to Wellstar Kennestone Hospital for a suicide attempt involving an overdose of one-hundred and twenty (120) lithium tablets and superficial laceration to his wrists and forearms.  R. 141-47, 229.  After being medically stabilized, Claimant was involuntarily committed for mental health treatment until November 16, 2004. R. 229-32.  Laboratory reports show Claimant tested positive for benzodiazepines, cocaine, marijuana, and barbiturates.  R. 229.  Mental status examination revealed an inappropriately flat affect, dysphoric mood, and some paranoid and delusional thought content.  R. 229-30.  Claimant was diagnosed with bipolar disorder, not otherwise specified, polysubstance dependence, substance induced mood disorder, borderline personality disorder, and was assigned a GAF score of 20.  R. 231.  Claimant's final prognosis was "[g]uarded because of the chronic enduring history of mood disorder and co-morbid polysubstance dependence, suffering with overall adaptive functioning difficulties."  R. 232.

On April 18, 2005, Claimant presented to Wellstar Kennestone Hospital complaining of chest pain anxiety.  R. 137.  Claimant was diagnosed with acute anxiety, given Xanax, and discharged.  R. 139.  On February 3, 2006, Dr. Harold C. Ledbetter, diagnosed Claimant with bipolar disorder, attention deficit disorder, high blood pressure, and tendonitis of the hands.  R. 180.

On January 20, 2006, in his Disability Report – Appeal, Claimant reported that he experiences side-effects from taking Zoloft – diarrhea, and Seroquel – "sleeps a lot."  R. 117. On February 3, 2006, Dr. Harold C. Ledbetter's handwritten notes show that Claimant

complained that Seroquel was not putting him to sleep and caused a burning sensation in his stomach.  R. 180.  At that time, Claimant was taking 150mg of Seroquel.  R. 180.  On February 26, 2006, Claimant was admitted to Halifax Medical Center after again attempting to commit suicide by ingesting thirty-two ounces of ethanol glycol - - antifreeze and superficially lacerating his legs.  R. 233-54.  Claimant was positive for cocaine, alcohol, and marijuana.  R. 235. Claimant was diagnosed with polysubstance abuse, history of bipolar disorder, personality disorder, and assigned a GAF score of 30-40.  R. 236.  The medical record shows that Claimant "was supposed to be on medications but was not taking them properly and had relapse of his bipolar disorder."  R. 239.  On April 20, 2006, in an additional Disability Report – Appeal, Claimant reported the following side-effects from his medications: Atenolol – "sleepy, sluggish"; and Depakote – pain in the lower back and kidneys, burning in the eyes, and upset stomach.  R. 130.  On August 5, 2006, Claimant again tried to commit suicide by self mutilating his right arm. R. 296-305, 342-48.  Claimant was involuntarily committed for depression and bipolar disorder. R. 299.

On October 10, 2007, Claimant presented to Dr. Jeff Oatley, a board certified clinical psychologist, for a consultative psychological examination.  R. 421-26.  Dr. Oatley was not provided with any of Claimant's prior medical records.  R. 421.  Claimant reported that he suffers "from a bipolar illness where he gets manic for a month and is very productive with a lot of energy and then gets depressed, then begins to drink alcohol."  R. 421.  Claimant stated that he has had "repeated inpatient mental health stays, starting a child, and most recently at ACT."  R. 421.  Claimant stated for the past month he had been living at Serenity House, an inpatient treatment center for individuals who suffer from mental health and substance abuse problems.  R.

422.  Claimant reported no alcohol intake for one month.  R. 421.  Claimant stated that he was

currently taking Depakote ER, Zoloft 100 mg., and Seroquel XL 300 mg.  R. 422.

Dr. Oatley made the following observations:

> Gait was balanced and speech easy to understand.  He was dressed
> appropriately and clean in appearance.  He had a long scar on his
> right forearm extending from his elbow to his wrist, which he
> reports was self-inflicted with a coke bottle.  Attention span and
> activity level was appropriate.  He was cooperative with the
> examination and attitude was pleasant.  He signed his name in
> cursive with his right hand using a good grip.

R. 422.  Dr. Oatley administered two tests – Wide Range Achievement Test, 4th Edition, and the

Minnesota Multiphase Personality Inventory II (the "Minnesota Test").  R. 422-23.   Regarding

the Minnesota Test, Dr. Oatley stated:

> The K did not reach scoring norms and F-K = + 12.  A mild
> seesaw pattern is noted.  This pattern reflects an individual who is
> self-presenting as having more problems than are actually
> experienced.   This self-presentational strategy functioned to
> elevate the overall profile, not sufficiently to invalidate the results,
> but interpretation is problematic.   The profile indicates an
> individual with significant problems and has a psychotic slope.

R. 423.  Dr. Oatley's diagnoses were as follows:

> 1. Alcohol Dependence, DSM-IV 303.90 as indicated by severe
> consequences while drinking alcohol.
> 2. Alcohol induced Mood Disorder, DSM-IV 291.89 as indicated
> by severe depression associated with alcohol usage.  He reports the
> long scar on his arm was self-inflicted when he was intoxicated.
> He has been alcohol free for a little for a month at this time.  He
> also reports suicide attempts by drinking ethylene glycol (auto
> antifreeze).
> 3.  Bipolar Disorder, NOS, DSM 296.80 as indicated by current
> hypomania and by self-report of having high energy all the time
> except when depressed.  He has been off alcohol for a month and
> still shows a mild hypomania with medication.

R. 423.  Dr. Oatley stated that Claimant's prognosis was fair.  R. 423.  Dr. Oatley further stated

that Claimant understands the value of money and could correctly mentally compute simple

mental purchases, but he may use additional funds to purchase substances of abuse.  R. 423.

Regarding Claimant's activities of daily functioning, Dr. Oatley stated:

> 1. Activities of dialing living: [Claimant] lives at a halfway house.
> Meals are prepared for him.  He is to keep his room clean and
> follow facility rules.  He was driven to this appointment today.  He
> is self sufficient in bathing and dressing.
> 2.  Social functioning: [Claimant] reports that he has friends and he
> has a good relationship with his wife, with whom he is separated.
> He attends religious services at his facility.
> 3.  Concentration and task performance:  [Claimant] reports that he
> has no difficulty completing routine household tasks.
> 4.  Employment: temporary hire companies employed [Claimant]
> last year.

R. 423.   Dr. Oatley also provided a Medical Source Statement of Ability to Do Work-Related

Activities (Mental), wherein he stated that Claimant has mild restrictions in the ability to:

understand remember simple instructions; carry out simple instructions; make judgments on

simple work-related decisions; understand and remember complex instructions; interact

appropriately with the public, supervisor(s), and coworkers; and respond appropriately to usual

work situations and to changes in a routine work setting.  R. 424-25.  Dr. Oatley opined that

Claimant has moderate restrictions in the ability to: make judgments on complex work-related

decisions; and carry out complex instructions.  R. 424-25.  Dr. Oatley based his opinion on

Claimant's hypomania.   R. 424-25.   Dr. Oatley concluded that alcohol exacerbates his

depression. R. 425. Dr. Oatley also stated that his conclusions are based on the assumption of

sobriety and that using alcohol would result in "marked" levels of restriction.  R. 425.

Although it is not clear from the record or the parties' memoranda, it appears Claimant

participated in a long-term psychiatric and substance abuse in-patient care program at Serenity

House sometime in 2007 through the date of the hearing before the ALJ, January 17, 2008. *See generally* R. 492-96, 552-53. Claimant was brought to the hearing by his case manager at the halfway house where Claimant resided at the time of the hearing. R. 552-53. A June 11, 2007, Bio-Psychological Evaluation performed at Serenity House indicates that Claimant reported experiencing no side-effects from Depakote, Zoloft, and Seroquel. R. 483-484. On December 5, 2007, a Physician Services Status Report from Serenity House indicates that Claimant's medications "need some adjustments," and, immediately thereafter, Claimant's Seroquel and Depakote were respectively increased to 400mg and 500mg. R. 497, 500.

Claimant's application was denied initially and upon reconsideration. R. 79-84, 88-89. Thereafter, Claimant requested a hearing before an ALJ. R. 76. On January 17, 2008, a hearing was held before ALJ Edward Bayouth-Babilonia. R. 550-628. Claimant, who was represented by counsel, Vocational Expert (the "VE") Robert Bradley, and Medical Expert Dr. Carlos Kronberger, were the only persons to testify at the hearing. R. 550-628.[2] Dr. Kronberger did not examine the Claimant, but was called to provide testimony as a medical expert by the ALJ after conducting a records review. R. 568. At the hearing Dr. Kronberger testified that Claimant suffers from two main mental disorders - - bipolar disorder and poly substance dependence, and an Axis II personality disorder. R. 569-70. Thereafter, the following exchange occurred between the ALJ and Dr. Kronberger:

> Q.    And so these two conditions are interrelated, the bipolar disorder
>       and the polysubstance dependence?
> A.    Yes, Your Honor.
> Q.    And I assume the polysubstance dependence condition is,
>       exacerbates his bipolar disorder, no?
> A.    Yes. By the descriptions provided it seems that he has had some

---

[2] The ALJ incorrectly states in his decision that Claimant's case manager at Serenity House, Tesia Smith, also testified at hearing. R. 26.

episodes of bipolar disorder, manic episodes that were severe and included psychotic symptoms.  And that's probably the reason why he was receives a fairly large dose of, as a psychotic medication, and mostly the crises have been precipitated by him discontinuing his medication and then going back to drinking alcohol and sometimes using drugs as well.  Discharge summery [sic] from . . . November of 2004 . . . suggests that he also has some type of Axis II personality disorder.  Most of the time the, there have been evaluations that have given him an antisocial personality disorder but on this one they suggested borderline personality disorder.

Q.	So you feel that what the record documents is a bipolar disorder and a polysubstance dependence?

A.	Yes.  <u>And I don't . . . believe that the situation was polysubstance dependence by itself produces the bipolar.  I think that they're co-morbid conditions.  Even if he were to have continued to maintain sobriety he would probably, he would continue to have bipolar disorder and would need to be on medication.</u>

Q.	So you say it's pre-morbid condition?

A.	Co-morbid, meaning that the two are running concurrently.

Q.	Okay.

A.	<u>It's not as if the drug use is inducing bipolar manic episodes.</u>

Q.	<u>So it is not that the, the polysubstance produces the bipolar, no</u>?

A.	<u>That's correct.</u>

Q.	It's a co-morbid condition but, but it can be, the, the bipolar condition can be exacerbated by the use of drugs, no?

A.	Yes, it, it is and it has been in his case, it has been exacerbated, particularly when he stopped taking medication.

Q.	So there's a compliance problem also in this case?

A.	Well, he has not remained consistently on medication and then usually when he stops taking the medicine sometime - - I don't, I don't know exactly the reasons, it's not indicated why he would stop taking the medicine.  <u>Sometimes the medication is stopped because of side effects and it's part and parcel of the problem for, for some people with severe psychiatric disorders</u>. . . .

Q.	Dr. Kronberger, after reviewing the totality of the medical evidence <u>do you feel that at any time he met or equaled any listing</u>?

A.	<u>Yes, that would be 12.04 [Affective Disorders] and 12.09 [Substance Abuse Addiction Disorders]</u>. . . .

Q.	Okay.  And what documents this, Dr. Kronberger?  Okay, you feel he meets listing 12.04 and 12.09 as of when, doctor?

A.	Well, certainly by the onset date, I mean 2003. . . .

Q.	<u>So you feel that his condition has continued until the present</u>?

A.	<u>Yes, until he, he was in, in jail in 2007.</u> . . .

Q.      Okay.  Now would, would you say then, Dr. Kronberger, that, that
        he, you feel that he meets that listing for a closed period of time
        then?
A.      Possibly, yes.
Q.      From [2003] through October of [2007]?
A.      Correct.
Q.      Okay.  And then after that he probably does not meet the listings?
A.      Right, provided he stays on medicine and maintains sobriety.
        Looking forward from that time on.

R. 570-71, 573, 575-76, 578, 582 (emphasis added).

The following exchange also occurred between Dr. Kronberger, counsel for Claimant,

and the ALJ:

Q.      Is it expected in a bipolar type disorder such as the
        [C]laimant's that he would have periods when he would
        discontinue his medications?
A.      Well, it, it happens very often, yes.
Q.      And is that a product of the bipolar disease, harmful
        consequences?
A.      In, in some cases, yes.
Q.      In . . . the instant case, is that what's been going on with
        this individual?
A.      Yes, I think so.
Q.      And with reference to periods of time when he would
        imbibe in alcohol and illicit drugs would that also not be
        unexpected in the [C]laimant's psychological profile?
A.      Well, that's considered more an Axis II consequence of
        having a personality disorder, that people
        would repetitively engage in these types of self-defeating
        behaviors.
Q.      Again that is a product of his mental disease?
A.      Yes.  That's not a product of bipolar or poly substance
        dependence, it's part of an Axis II condition.

                        ***

ALJ.    But in, in retrospect the drug addiction and alcoholism has
        contributed to his bipolar disorder significantly, no, doctor?
ME.     Yes, without a doubt.
ALJ.    Okay.
ATTY.   Is, has it contributed to it, doctor, or is it a product of the
        bipolar disorder?

-10-

> ME.            No, I think it has contributed, <u>there are two separate</u>
>                <u>conditions that are coexisting</u>.

R. 591-93 (emphasis added).  Thus, Dr. Kronberger testified that Claimant's impairments meet

Listing 12.04 from 2003 through October of 2007.  R. 582.  Dr. Kronberger also explicitly

testified that Claimant's polysubstance dependence, although exacerbating, does not cause his

bipolar episodes, and the two conditions are separate but coexisting.  R. 570-71, 573, 575-76,

578, 582, 591-93. Dr. Kronberger also testified that alcohol abuse and use of illicit drugs is a

consequence of having an Axis II personality disorder.  R. 591-92.  Thus, Dr. Kronberger

testified that "[e]ven if he were to have continued to maintain sobriety . . . he would continue to

have bipolar disorder but if he also stayed on his medications he would not meet the listings."  R.

571.[3]

　　　　Claimant testified that he has not worked while at Serenity House and his only duty is to

wash dishes at the end of the day along with the other residents.  R. 561.  At the hearing, neither

the ALJ nor the Claimant's attorney directly questioned Dr. Kronberger or the Claimant about

any side-effects he experienced from taking his medications.  R. 550-628.  However, Claimant's

counsel asked him whether there was "anything that you need to tell us that I or His Honor

haven't asked you," and the Claimant did not mention any side-effects from his medications.  R.

620.

　　　　During the hearing, the ALJ posed the following hypothetical question to the VE:

> Okay, let's take into consideration his age, vocation and past
> relevant work experience and there are no, no physical limitations
> and if we consider that he would have the following limitations,
> understanding, remembering simple instructions to be mildly to

---

[3] On April 11, 2007, a brief hearing was held before the ALJ, but the hearing was continued until January 17, 2008 so that a consultative psychological examination and testing could be performed and to obtain updated medical records.  R. 544-49.

> moderately limited, also in carrying out simple instructions and the ability to make judgment in simple, work related decisions and in relation to understand and remembering complex instructions he would be moderately, moderately limited.  And carry out complex instructions, moderately limited, which is more than satisfactory [sic] limitation but the individual is still able to function satisfactory and the ability to make judgment and complex work related decisions he would be moderately limited also.  And the ability to interact appropriately with the public, supervisors, coworkers in usual work situations would be mildly to moderately limited. Considering these restrictions and limitations would he be able to perform any of his past relevant work?

R. 625-26.  The VE responded that the Claimant "could perform all of his past relevant work according to that hypothetical."  R. 626.

On April 25, 2008, the ALJ issued a decision finding Claimant not disabled.  R. 21-30. Ultimately, the ALJ concluded that "the [C]laimant was under a disability through October 1, 2007, but . . . a substance abuse disorder was a contributing factor material to the determination of disability," and, therefore, the Claimant is not disabled.  R. 22.  The ALJ made the following findings:

1. The Claimant meets the insured status requirements of the Social Security Act through June 30, 2008;

2. The Claimant has not engaged in substantial gainful activity since January 31, 2003, the alleged onset date;

3. The Claimant has the following severe impairments: an affective disorder/bipolar disorder (syndrome) with manic and depressive episodes and a substance abuse disorder with depressive syndrome;

4. The Claimant's bipolar syndrome and depressive syndromes, including the substance abuse disorder, met sections 12.04 and 12.09 from July 26, 2003 through October 1, 2007;

5. After careful consideration of the entire record, the undersigned finds that based on all of the impairments, including the substance abuse disorders, after October 1, 2007, the Claimant no longer met the aforementioned listings and regained the residual functional capacity to perform work at any level of physical exertion with mild restrictions of

activities of dialing living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation;

6. After October 1, 2007, considering his bipolar syndrome and depressive syndrome including the substance abuse disorders, the Claimant was able to perform all of his past relevant work;

7. If the Claimant stopped the substance abuse, the remaining mental limitations would cause no more than a mild to moderate impact on the Claimant's ability to perform basic work activities; therefore, the Claimant would continue to have a severe impairment or combination of impairments;

8. If the Claimant stopped the substance abuse, the Claimant would not have an impairment or combination of impairments that meets or medically equals any of the impairments [in the listings];

9. If the Claimant stopped the substance abuse, the Claimant would have the residual functional capacity to perform work at any level of physical exertion with mild restrictions of activities of dialing living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace and no episodes of decompensation. He would also be "mildly to moderately" limited in understanding [and] remembering simple instructions; "moderately" limited in carrying out simple instructions and making simple decisions and complex instructions; able to function satisfactorily; "moderately" limited in making simple and complex decisions; and an ability to interact with co-workers.  As used herein, the terms "mild" and "moderate" have the definitions that are contained in the RFC (Mental) form completed by Dr. Kronberger at the recent hearing;[4]

10. If the Claimant stopped the substance abuse, the Claimant would be able to perform past relevant work as an auto mechanic, a maintenance repair person and a cleaner.  This work does not require the performance of work-related activities precluded by the credible residual functional capacity the Claimant would have if he stopped the substance abuse; and

---

[4] The record contains an unsigned document which purports to be Dr. Kronberger's Medical Source Statement of Ability to Do Work-Related Activities (Mental) which was prepared from his testimony. *See* R. 3, 505-507. The document notes that Claimant has marked or extreme limitations in all areas of mental functioning. *See* R. 505-506. There is no other medical source statement from Dr. Kronberger in the record.  The Court is without knowledge as to why the document is unsigned or why it significantly differs from the testimony of Dr. Kronberger and the ALJ's findings.  Moreover, in the ALJ's hypothetical question to the VE, he stated that "moderately limited . . . is more than satisfactory [sic] but the individual is still able to function satisfactory. . . ."  R. 626.  However, the definition of "moderate" in the form is "more than a slight limitation in this area but the individual is still able to function satisfactorily."  R. 505 (emphasis added).  Accordingly, the ALJ misstated the definition of "moderate" in his hypothetical question to the VE.

11. Because the Claimant would not be disabled if he stopped substance abuse, the Claimant's substance abuse disorder is a contributing factor material to the determination of disability.  Thus, the Claimant has not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision.

R. 21-30 (emphasis added).  Thus, the ALJ concluded that if Claimant stopped the polysubstance abuse he would no longer be disabled and, therefore, the regulations compel a finding of no disability.  *Id*.

In the decision, the ALJ relies almost exclusively on the testimony of Dr. Kronberger.  R. 24-29.  To that end, the ALJ made the following determination: "Dr. Kronberger testified that the [C]laimant's polysubstance abuse dependence was a co-morbid condition which produced his bipolar manic episodes, particularly when he stopped taking his prescribed medications."  R. 24 (emphasis added).  Accordingly, the ALJ found that if the Claimant stopped engaging in polysubstance abuse he would not suffer from bipolar episodes and would no longer be disabled.

In his decision, the ALJ did not discuss any side-effects caused by the Claimant's medications, but does note that "Dr. Kronberger testified that the reasons the [C]laimant stops taking his medications are not indicated but he testified that sometimes it was due to side effects or not having access to medications."  R. 25.[5]  The ALJ also states that "[t]he [C]laimant noted that his medication was changed on December 5, 2007 and that he was taken off Zoloft because he was not able to sleep and he was put on Seroquel and Depakote."  R. 27.  However, the ALJ made no findings regarding any side-effects from Claimant's medications or their effect on his ability to work.  In addition, the ALJ's decision does not discuss, in any way, Dr. Oatley's consultative examination.  R. 21-30.

After the ALJ's decision, Claimant requested review before the Appeals Council and, on

---

[5] The ALJ did not address Dr. Kronberger's testimony that Claimant's failure to take medications is attributable to his Axis II personality disorder. R. 591-93.

May 18, 2009, the Appeals Council denied Claimant's request for review making the ALJ's decision the final decision of the Commissioner.  R. 5-7.  Thereafter, Claimant sought review of the Commissioner's final decision in the District Court.  Doc. No. 1.

## II.    THE PARTIES' POSITIONS.

The Claimant raises three general issues regarding the Commissioner's final decision. Doc. No. 15.  As to the first issue, Claimant makes two broad but related arguments: a) substantial evidence demonstrates that Claimant's substance abuse is not a contributing factor to his disability; and b) the ALJ failed to consider the combination of Claimant's impairments and found Claimant's substance abuse causes his bipolar episodes without any substantial evidence supporting that finding.  Doc. No. 15 at 13-18.  In support of the Claimant's second argument, Claimant maintains: the ALJ's decision is not supported by substantial evidence because it relies exclusively on the testimony of Dr. Kronberger, a non-examining psychologist (citing *Swindle v. Sullivan*, 914 F.2d 222, 226 n.3 (11th Cir. 1990)); the ALJ failed to state the weight given to the various medical opinions of record (citing *Sharfaz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)); and the ALJ conducted an adversarial hearing rather than an inquisitorial hearing, as required by *Sims v. Apfel*, 530 U.S. 103, 120 (2000), by asking Dr. Kronberger the same question eleven (11) times looking for evidentiary support for the conclusion that Claimant's substance abuse is a contributing factor to his disability.  Doc. No. 15 at 16-18.

Regarding the second issue, Claimant argues that the ALJ failed to discharge his duty to elicit testimony regarding the effectiveness and side-effects of Claimant's medications and failed to make any findings regarding the same.  Doc. No. 15 at 8-11.  The final issue raised by Claimant is that the ALJ failed to include Claimant's moderate limitations in concentration,

persistence, or pace, and mild difficulties in social functioning in the ALJ's hypothetical question to the VE.  Doc. No. 15 at 18-20.  Claimant maintains that this alleged error is significant because "'[i]n order for a [VE's] . . . testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"  Doc. No. 15 at 19 (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002)).    Accordingly, Claimant argues that the ALJ's finding that Claimant could return to his past relevant work is not supported by substantial evidence.  Doc. No. 15 at 19-20.  Claimant requests that the case be remanded "with directions to consider all of the evidence, make findings supported by substantial evidence, and apply the correct legal standards."  Doc. No. 15 at 20.

The Commissioner maintains that substantial evidence supports the final decision in this case.  Doc. No. 16 at 1-13.  As to the first issue, the Commissioner maintains that the Claimant bears the burden of demonstrating that his substance abuse was not a contributing factor material to a finding of disability and that the Claimant failed to meet that burden.  Doc. No. 16 at 7-8 (citing *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).  The Commissioner argues that "the ALJ considered <u>all the relevant medical evidence</u>."  Doc. No. 16 at 8-9 (emphasis added). The Commissioner asserts that Dr. Oatley's consultative examination and Dr. Kronberger's testimony support the ALJ's conclusion.  Doc. No. 16 at 8-9.  Accordingly, the Commissioner maintains that the Claimant failed to meet his burden and substantial evidence supports the ALJ's decision.  Doc. No. 16 at 9.  The Commissioner's memorandum does not address whether: the ALJ erred by exclusively relying on Dr. Kronberger's testimony, failing to state the weight given to the other medical opinions in the record, or conducting an adversarial hearing.  Doc. No. 16 at 1-13.

-16-

Regarding the second issue, the Commissioner maintains that the Claimant failed to provided evidence supporting his allegations of side-effects from his medications and the ALJ "implicitly discounted" Claimant's allegations of side-effects by finding that the Claimant's subjective statements not entirely credible.  Doc. No. 16 at 4-6.  Regarding the third issue, the Commissioner maintains that the hypothetical question posed to the VE encompassed all of the Claimant's reasonable limitations.  Doc. No. 16 at 10-11.  Accordingly, the Commissioner requests that the Court affirm the final decision of the Commissioner.  Doc. No. 16 at 12.

## III.  LEGAL STANDARDS.

### A.   THE ALJ'S FIVE-STEP DISABILITY ANALYSIS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 CFR §§ 404.1520(a), 416.920(a).  The steps are followed in order.  If it is determined that the claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 CFR §§ 404.1520(b), 416.920(b).  Substantial gainful activity ("SGA") is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves performing significant physical or mental activities. 20 CFR §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually performed for pay or profit, whether or not a profit is realized. 20 CFR §§ 404.1572(b), 416.972(b).  Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that he has demonstrated the ability to engage in SGA. 20 CFR §§

-17-

404.1574, 404.1575, 416.974, 416.975.  If an individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, the ALJ must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe." 20 CFR §§ 404.1520(c), 416.920(c).  An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities.  20 CFR § 404.1521.  An impairment or combination of impairments is "not severe" when medical or other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR §§ 404.1521, 416.921.

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process.  42 U.S.C. § 423(d)(2)(B).  The ALJ must evaluate a disability claimant as a whole person, and not in the abstract as having several hypothetical and isolated illnesses. *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993).  Accordingly, the ALJ must make it clear to the reviewing court that the ALJ has considered all alleged impairments, both individually and in combination, and must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *See Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987); *Davis*, 985 F.2d at 534.  A mere diagnosis is insufficient to establish that an impairment is severe.  *See Sellers v. Barnhart*, 246 F.Supp.2d 1201, 1211 (M.D. Ala. 2002) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986)).

-18-

A claimant has the burden of proof to provide substantial evidence establishing that a physical or mental impairment has more than a minimal effect on a claimant's ability to perform basic work activities. *See Bridges v. Bowen*, 815 F.2d 622, 625-26 (11th Cir. 1987).  However, a remand is required where the record contains a diagnosis of a severe condition that the ALJ failed to consider properly.  *Vega v. Comm'r*, 265 F.3d 1214, 1219 (11th Cir. 2001).  If the claimant does not have a severe medically determinable impairment or combination of impairments, he is not disabled.  If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, it must be determined whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listing(s)"). 20 CFR §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926.  If the claimant's impairment or combination of impairments meets or medically equals the criteria of a Listing and meets the duration requirement (20 CFR §§ 404.1509, 416.909), the claimant is disabled.  If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 CFR §§ 404.1520(e), 416.920(e).  An individual's RFC is his ability to do physical and mental work activities on a sustained basis despite limitations secondary to his established impairments.  In making this finding, the ALJ must consider all of the claimant's impairments, including those that may not be severe. 20 CFR §§ 404.1520(e), 404.1545, 416.920(e), 416.945.

Next, the ALJ must determine step four, whether the claimant has the RFC to perform the

-19-

requirements of his past relevant work. 20 CFR §§ 404.1520(f), 416.920(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997).  The ALJ makes this determination by considering the claimant's ability to lift weight, sit, stand, push, and pull.  *See* 20 C.F.R. § 404.1545(b).  The claimant has the burden of proving the existence of a disability as defined by the Social Security Act.  *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991).  If the claimant is unable to establish an impairment that meets the Listings, the claimant must prove an inability to perform the claimant's past relevant work.  *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).  The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that disability must be established.  In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA. 20 CFR §§ 404.1560(b), 404.1565, 416.960(b), 416.965.  If the claimant has the RFC to do his past relevant work, the claimant is not disabled.  If the claimant is unable to do any past relevant work, the analysis proceeds to the fifth and final step.

At the last step of the sequential evaluation process (20 CFR §§ 404.1520(g), 416.920(g)), the ALJ must determine whether the claimant is able to do any other work considering his RFC, age, education and work experience.   In determining the physical exertional requirements of work available in the national economy, jobs are classified as sedentary, light, medium, heavy, and very heavy.  20 CFR § 404.1567.  If the claimant is able to do other work, he is not disabled.  If the claimant is not able to do other work and his impairment meets the duration requirement, he is disabled.  Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the

evidence shifts to the Social Security Administration.  In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education and work experience. 20 CFR §§ 404.1512(g), 404.1560(c), 416.912(g), 416.960(c).

### B.     THE STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (*citing Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord, Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

Congress has empowered the district court to reverse the decision of the Commissioner without remanding the cause.  42 U.S.C. § 405(g)(Sentence Four).  To remand under sentence four, the district court must either find that the Commissioner's decision applied the incorrect law, fails to provide the court with sufficient reasoning to determine whether the proper law was applied, or is not supported by substantial evidence.  *Keeton v. Dep't of Health & Human Serv.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (reversal and remand appropriate where ALJ failed to apply correct law or the ALJ failed to provide sufficient reasoning to determine where proper legal analysis was conducted) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990));  *Jackson v. Chater*, 99 F.3d 1086, 1090-91 (11th Cir. 1996) (remand appropriate where ALJ failed to develop a full and fair record of claimant's RFC); *accord Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

This Court may reverse the decision of the Commissioner and order an award of disability benefits where the Commissioner has already considered the essential evidence and it is clear that the cumulative effect of the evidence establishes disability without any doubt.  *Davis v. Shalala*, 985 F.2d 528, 534 (11th Cir. 1993); *accord*, *Bowen v. Heckler*, 748 F.2d 629, 631, 636-37 (11th Cir. 1984).  A claimant may be entitled to an immediate award of benefits where the claimant has suffered an injustice, *Walden v. Schweiker*, 672 F.2d 835, 840 (11th Cir. 1982), or where the ALJ has erred and the record lacks substantial evidence supporting the conclusion of no disability, *Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985). The district court may remand a case to the Commissioner for a rehearing under sentences four or six of 42 U.S.C.

§ 405(g); or under both sentences.  *Jackson*, 99 F.3d at 1089-92, 1095, 1098.  Where the district

court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be

appropriate to allow the Commissioner to explain the basis for his decision.  *Falcon v. Heckler*,

732 F.2d 827, 829 - 30 (11th Cir. 1984) (remand was appropriate to allow ALJ to explain his

basis for determining that claimant's depression did not significantly affect her ability to work).[6]

## IV.    **ANALYSIS.**

Weighing the opinions and findings of treating, examining, and non-examining

physicians is an integral part of steps four and five of the ALJ's sequential process for

determining disability.  The opinions or findings of a non-examining physician are entitled to

little weight when they contradict the opinions or findings of a treating or examining physician.

*Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988).  The ALJ may, however, reject any medical

opinion if the evidence supports a contrary finding.  *Sryock v. Heckler*, 764 F.2d 834, 835 (11th

Cir. 1986).  Nonetheless, the ALJ must state with particularity the weight given different medical

opinions and the reasons therefore, and the failure to do so is reversible error.  *Sharfarz v.*

*Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ stating the specific weight given to

different medical opinions and the reasons therefore, it is impossible for a reviewing court to

determine whether the ultimate decision is supported by substantial evidence.  *See e.g. Hudson v.*

*Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).[7]  Absent good cause, the opinions of treating

physicians must be accorded substantial or considerable weight.  *Lamb*, 847 F.2d at 703.

---

[6] On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  *Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand ALJ required to consider psychiatric report tendered to Appeals Council); *Reeves v. Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984) (on remand ALJ required to consider the need for orthopedic evaluation).  After a sentence-four remand, the district court enters a final and appealable judgment immediately, and then loses jurisdiction.  *Jackson*, 99 F.3d at 1089, 1095.

[7] The Regulations maintain that the administrative law judges "will always give good reasons in [their] . . . decision for the weight [they] give [a] treating source's opinion." 20 C.F.R. § 404.1527(d)(2).

> Good cause exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir.2004) (citations omitted); *see also Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir.1991); *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir.1986).

*Johnson v. Barnhart*, 138 Fed.Appx. 266, 269 (11th Cir. 2005).   "The opinion of a non-examining physician does not establish the good cause necessary to reject the opinion of a treating physician." *Johnson,* 138 Fed.Appx. at 269.

It is well established in the Eleventh Circuit that the opinions of a non-examining physician do not constitute substantial evidence on which to base a decision.  *Spencer ex rel. Spencer v. Heckler*, 765 F.2d 1090, 1094 (11th Cir. 1985).  In his decision, with the exception of testimony from the VE, the ALJ relies almost exclusively on the testimony and opinions of Dr. Kronberger.  R. 21-30.  Dr. Kronberger was a non-examining physician who testified based on a records review.  R. 24, 552.  Accordingly, the undersigned recommends that the Court find that final decision of the Commissioner was not supported by substantial evidence because it was based on the testimony and opinions of a non-examining physician.

An ALJ must state with particularity the weight given different medical opinions and the reasons therefor, and the failure to do so is reversible error.  *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987).  Without the ALJ stating the specific weight given to different medical opinions and the reasons therefore, it is impossible for a reviewing court to determine whether the ultimate decision is supported by substantial evidence.  *See e.g. Hudson v. Heckler*, 755 F.2d 781, 786 (11th Cir. 1985).  In this case, the ALJ did not discuss the findings and opinions of Dr. Oatley and did not state the weight given to any medical opinion in the record. R. 21-30.  While

it is obvious that the ALJ gave controlling weight to the opinions of Dr. Kronberger, as set forth above, Dr. Kronberger's opinions standing alone do not constitute substantial evidence. Accordingly, the undersigned recommends that the Court find that the ALJ erred by failing to state the specific weight given to the medical opinions in the record and the reasons therefor.

In his decision, the ALJ found that if Claimant stopped abusing alcohol and drugs, he would no longer be disabled.  R. 21-30.  The ALJ's conclusion rests upon his finding that "Dr. Kronberger testified that the [C]laimant's polysubstance dependence was a co-morbid condition which produced his bipolar manic episodes. . . ." R. 24 (emphasis added).  However, the above finding is a misstatement of Dr. Kronberger's testimony.  Dr. Kronberger specifically testified that Claimant's drug use does not cause bipolar manic episodes. R. 571.

In *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983), the Eleventh Circuit held that an ALJ's misstatement of fact is harmless error if it does not affect the ALJ's conclusion.  *Id*.  In this case, Dr. Kronberger testified that from January 31, 2003 through October 1, 2007, Claimant met the listing level requirements of 12.04 – Affective Disorder, and 12.09 – Substance Abuse Disorder.  R. 573.  Moreover, Dr. Kronberger testified that the conditions run concurrently and, although Claimant's substance abuse exacerbates and "contributes significantly" to his bipolar disorder, the substance abuse does not cause the disorder.  R. 571, 592-93. The ALJ's decision does not rely on, weigh, or significantly mention any other medical record or opinion in the record regarding the effect of Claimant's poly substance dependence on his mental impairments. R. 21-30.  Thus, the ALJ's misstatement of fact regarding Dr. Kronberger's opinion substantially affect's the ALJ's ultimate conclusion.

While Claimant bears the burden of proof on the issue of whether his substance abuse is a

contributing factor material to disability determination, the final decision of the Commissioner must be supported by substantial evidence. The Commissioner states that the ALJ's determination is supported by the opinion of Dr. Oatley and the testimony of Dr. Kronberger. Doc. No. 16 at 8-9. However, in his decision, the ALJ never discusses the examination or opinion of Dr. Oatley. *See* R. 21-30. The Eleventh Circuit has recently held that "a court may not accept appellate counsel's *post hoc* rationalizations for agency actions," and "[i]f an action is to be upheld, it must be upheld on the same bases articulated in the agency's order." *Baker v. Commissioner of Social Security*, 2010 WL 2511385 at *3 (11th Cir. June 23, 2010) (citing *FPC v. Texaco Inc.*, 417 U.S. 380, 397 (1974) (emphasis in original)).[8] Accordingly, because the ALJ did not base his determination on Dr. Oatley's opinion, the undersigned may not consider whether Dr. Oatley's opinion supports the ALJ's determination. Thus, the sole basis of ALJ's determination is the testimony of a non-examining physician, Dr. Kronberger, which the ALJ misstated. For the reasons set forth above, the undersigned recommends that the final decision of the Commissioner is not supported by substantial evidence.

V.    **CONCLUSION.**

Based on the forgoing, the undersigned recommends that the Court:

1.    **REVERSE and REMAND** the final decision of the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) because the decision is not supported by substantial evidence;[9] and

2.    Direct the Clerk to enter judgment in favor of the Claimant and close the case.

---

[8] Unpublished decisions of the Eleventh Circuit are not binding, but are persuasive authority.
[9] Because the undersigned recommends that the Court find that the final decision of the Commissioner is not supported by substantial evidence, it is unnecessary to address the other issues raised by the Claimant.

Failure to file written objections to the proposed findings and recommendations contained in this report within **fourteen (14) days** from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

     **Recommended** in Orlando, Florida on August 3, 2010.


_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE


The Court Requests that the Clerk
Mail or Deliver Copies of this Report and Recommendation to:

Richard A. Culbertson, Esq.
3222 Corrine Drive, Suite E
Orlando, FL 32803

Susan R. Waldron
U.S. Attorney's Office
Suite 3200
400 N. Tampa St.
Tampa, Florida          33602

Mary Ann Sloan, Regional Chief Counsel
Dennis R. Williams, Deputy Regional Chief Counsel
Susan Kelm Story, Branch Chief
Christopher G. Harris, Assistant Regional Counsel
Office of the General Counsel, Region IV
Social Security Administration
61 Forsyth Street, S.W., Suite 20T45
Atlanta, Georgia          30303-8920

The Honorable Edward Bayouth-Babilonia
Administrative Law Judge
c/o Office of Disability Adjudication and Review
Desoto Building, #400
8880 Freedom Crossing
Jacksonville, Florida  32256-1224